UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

GABRIELLE MONACO, on behalf
of herself and other similarly
situated individuals,                                   **18-cv-04101 (AMD) (VMS)**

                        Plaintiff,

        v.

THE HISTORIC OLD BERMUDA INN, INC.,
and JOHN VINCENT SCALIA, SR.,

                        Defendants.
-------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF THE SETTLEMENT AGREEMENT, 2) CERTIFICATION OF THE
SETTLEMENT CLASS, (3) APPROVAL OF THE FLSA SETTLEMENT, AND (4)
APPROVAL OF CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND
REIMBURSEMENT OF EXPENSES**

**GISKAN SOLOTAROFF & ANDERSON LLP**
Jason L. Solotaroff
Amy E. Robinson
90 Broad Street, 10th Floor
New York, NY 10004
(212) 847-8315

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iv

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................1

A.    The Litigation ............................................................................................2

B.    The Settlement Agreement .......................................................................3

C.    Notice To The Class By Direct Mail. .......................................................3

D.    The Claims Process...................................................................................3

E.    Opt-Outs and Objectors ...........................................................................4

ARGUMENT .......................................................................................................4

A.    The Settlement Class Satisfies Rule 23. ..................................................4

1.    Rule 23(a)(l) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable. ......................................................................................................4

2.    Rule 23(a)(2)-The Claims of the Settlement Class Arise from Common Questions of Law and Fact. ...................................................................................................................5

3.    Rule 23(a)(3) - Named Plaintiffs' Claims Are Typical Of The Claims Of The Settlement Class. ....................................................................................................................6

4.    Rule 23(a)(4)- Plaintiff and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class....................................................................................6

5.    The Settlement Class Is Appropriate Pursuant to Rule 23(b)(3). .........................7

6.    Certification of the "Hybrid" Rule 23 Class and FLSA Collective Action Is Appropriate..9

7.    The Settlement Is Fair, Reasonable and Adequate under Rule 23(e). ................9

a.    Complexity, Expense, and Duration of the Litigation.......................................10

b.    Reaction of the Class. ......................................................................................11

c.    Stage of the Proceedings. ...............................................................................11

d.    Risks of Establishing Liability and Damages..................................................11

e.  Risk in Maintaining the Class Action.................................................................12

f.  Defendants' Ability to Withstand a Greater Judgment. ....................................13

g.  Range of Reasonableness. ................................................................................13

h.  The Settlement Was Negotiated at Arm's Length by Experienced Counsel. ....................14

B.  Approval of the Settlement of the FLSA Claims Is Also Appropriate ..........................15

C.  Class Counsel's Request For Attorney's Fees And Reimbursement of Expenses Should
Be Approved.................................................................................................16

1.  The Time and Labor Expended. ...............................................................17

2.  The Magnitude and Complexity of the Litigation. .............................................17

3.  Risk of Litigation.................................................................................18

4.  Quality of Representation.........................................................................18

5.  The Fee Request In Light Of The Result Achieved ...........................................19

D.  Public Policy Considerations ....................................................................20

E.  The Incentive Award Should be Approved. ...................................................20

CONCLUSION ...................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips v. Walling,*
324 U.S. 490 (1945) .................................................................................................20

*Banyai v. Mazur,*
2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007)......................................13

*Barrentine v. Askansas-Best Freight Sys. Inc.,*
450 U.S. 728 (1981) ...............................................................................................18

*Brunson v. The City of New York,*
2000 U.S. Dist. LEXIS 18434 (S.D.N.Y. Dec. 21, 2000) ......................................18

*Cagan v. Anchor Sav. Bank FSB,*
1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990).......................................14

*Caridad v. Metro-North Commuter R.R.,*
191 F.3d 283 (2d Cir. 1999) .....................................................................................6

*Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed*
*Care, L.L.C.,* 504 F.3d 229 (2d Cir. 2007) ..............................................................19

*Cheeks v. Freeport Pancake House, Inc.,*
796 F.3d 199 (2d Cir. 2015) ...................................................................................15

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1997) .........................................................................10, 11, 13

*Clark v. Ecolab, Inc.,*
2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) .........................................9

*Cohetero v. Stone & Tile, Inc.,*
No. 16-CV-4420 (KAM)(SMG), 2018 U.S. Dist. LEXIS 12280 (E.D.N.Y. Jan. 25, 2018)
.................................................................................................................................15

*Consolidated Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) .......................................................................................5

*Damasia v. Duane Reade, Inc.,*
2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 24, 2009).........................................9

*Damassia v. Duane Reade,* Inc.,
250 F.R.D. 152 (S.D.N.Y. 2008)...........................................................................6, 8

iv

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 200l) ........................................................................10, 15

*Duchene v. Michael Cetta, Inc.*,
  2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. I 0, 2009) ...........................................9

*Eisen v. Carlisle & Jacqueline*,
  391 F.2d 555 (2d Cir. 1968) ...........................................................................7

*Flores v. Anjost Cor*p.,
  2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 28, 2014) .........................................22

*Foti v. NCO Financial Systems, Inc.*,
  2008 U.S. Dist. LEXIS 16511 (Feb. 20, 2008 E.D.N.Y.) ........................................10

*Frank v. Eastman Kodak, Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................passim

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)...............................12, 13, 20

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ...........................................................................17

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007).......................................................................7

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................13

*In re American Bank Note Holographies*,
  127 F. Supp.2d. 418 (S.D.N.Y 2001) ...............................................................11

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), ...........................................................10, 12

*In re Crazy Eddie*,
  824 F. Supp. 320 (E.D.N.Y. 1993) ..................................................................18

*In re EVVI Career Coils. Holding Corp. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)...........................................11

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)......................................................................10

*In re Medical X-Ray Film Antitrust Litig.*,
    1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ...............................................11, 12, 15

*In re NASDAQ Market- Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998)......................................................................................19

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997).......................................................................................15

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y 1999). .................................................................................20

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ...........................................11

*Johnson v. Brennan*,
2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sep. 16, 2011) ...........................................................22

*Kreuzfeld A.G. v. Carnehammer*,
138 F.R.D. 594 (S.D. Fla. 1991) .................................................................................................5

*Krueger v. New York Tel. Co.*,
163 F.R.D. 433 (S.D.N.Y. 1995)..................................................................................................6

*Le v. Sita Info. Networking Computing USA, Inc.*,
    No. 07 CV 86, 2008 U.S. Dist. LEXIS 46174 (E.D.N.Y. June 12, 2008)...........................16

*Lenahan v. Sears, Roebuck & Co.*,
    2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) .......................................................8

*Li Ming Yan v. China Gourmet Food Inc.*,
    No. 17 CV 1925 (CLP), 2018 U.S. Dist. LEXIS 119064 (E.D.N.Y. July 17, 2018) ..........15

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350, n.8 (11th Cir. 1982) ..................................................................................16

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) (per curiam) .......................................................................5, 6

*McMahon v. Olivier Cheng Catering and Events, LLC*,
    2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010)...........................................................9

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009)...................................................*passim*

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...............................................................................................14

vi

*Officers of Justice v. Civil Serv. Comm 'n,*
   688 F.2d 615 (9th Cir. 1982) .................................................................................14

*Ortiz v. Chop't Creative Salad Co.,*
   No. 13 Civ. 2541, 89 F. Supp. 3d 573 (S.D.N.Y. Jan. 16, 2015) ................................21

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) .............................................................................................20

*Reyes v. Buddha-Bar NYC,*
   2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ...................................9, 14

*RMED Int 'l, Inc. v. Sloan's Supermarkets, Inc.,*
   2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) .........................................11

*Shamsundar v. FCS Grp. LLC,*
   No. 18 CV 2514 (KAM) (LB), 2019 U.S. Dist. LEXIS 87368, (E.D.N.Y. May 22, 2019).......16

*Taft v. Ackermans,*
   2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) .........................................19

*Torres v. Gristede's Operating Corp.,*
   2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ....................................5, 8

*Velez v. Majik Cleaning Serv.,*
   2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ...................................13, 20

*Vidal v. Eager Corp.,*
   No. 16 CV 979, 2018 U.S. Dist. LEXIS 42113 (E.D.N.Y. Mar. 13, 2018) ...............16

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) .....................................................................................9

*Wolinsky v. Scholastic Inc.,*
   900 F. Supp. 2d 332 (S.D.N.Y. 2012) ...................................................................15

**Statutes**
29 U.S.C. § 201 .......................................................................................................1

New York Labor Law ("NYLL") § 190 et seq .............................................................1

New York Labor Law ("NYLL") § 650 et seq .............................................................1

**Rules**
Rule 23(a) ...............................................................................................................9

Rule 23(a)(2) ...........................................................................................................5

Rule 23(a)(3) ................................................................................................................... 6

Rule 23(a)(4) ............................................................................................................... 6, 7

Rule 23(b) ....................................................................................................................... 9

Rule 23(b)(3) ................................................................................................................... 7

Rule 23(e) ....................................................................................................................... 9

Rule 41(a)(1)(A)(ii) ...................................................................................................... 15

Plaintiff Gabrielle Monaco, on behalf of herself and other similarly situated individuals, submits this memorandum of law in support of their motion for (1) final approval of the class action settlement; (2) certification of the settlement class; (3) approval of the FLSA settlement; and (4) an award of Class Counsel's fees and reimbursement of expenses. The settlement provides for a total of $180,000 in monetary relief, resolves all claims in this wage and hour class and collective action, and satisfies all criteria for final approval.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The settlement class consists of current and former employees of Defendant The Historic Old Bermuda Inn, a catering and events facility which at all relevant times was owned and operated by Defendant John Vincent Scalia Sr. Class members have been employed by The Old Bermuda Inn as service providers after July 18, 2012.

The complaint alleged Defendants violated federal and New York State labor laws by failing to pay the class gratuities. This action was brought as an opt-in collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and an opt-out Rule 23 class action for claims pursuant to the New York Labor Law ("NYLL") § 190 et seq. and § 650 et seq., to recover the gratuities owed, as well as statutory and liquidated damages.

The core allegation was that the Defendants operated an unlawful payroll system, under which Defendants paid the class flat rates for an event, rather than a percentage of the service charges collected for that event, and that system resulted in the class receiving less than their respective percentages of the service charge.

Based on Plaintiff's calculations, during Ms. Monaco's three-month tenure at the Old Bermuda Inn, Class Members were deprived of approximately $14,000 in service charges.

1

Based on that number, Plaintiff calculated that the Class Members would be owed $336,000.

Defendants had a very different interpretation. They explained that the Old Bermuda Inn carries over the excess gratuities weekly and uses those funds to make up the difference for days when the payments to Class Members exceed the service charges received. They maintained that the service charges were distributed fairly and lawfully and denied any liability. Based on records provided by Defendants, such as catering contracts and tip distribution records, it appeared the Class would be owed far less than $336,000 and perhaps nothing.

After a private mediation before Elliott D. Shriftman, Esq., an experienced mediator in wage and hour cases, the parties reached a preliminary settlement in which the Defendants agreed to pay the class $180,000 inclusive of counsel and claims administrator fees and expenses.

On May 17, 2019, the Court entered an order granting preliminary approval of the settlement and certification of the Class for settlement purposes and directed that notice be provided to Class members (the "Preliminary Order"). In accordance with the Preliminary Order, Plaintiffs submit this memorandum of law in support of final approval of the settlement and an award of Class Counsel's fees and reimbursement of expenses.

### A. The Litigation

On July 18, 2018, Plaintiff commenced this action as a putative class and collective action for wage and hour violations pursuant to the FLSA and NYLL to recover wages owed to them by Defendants. The procedural history of the litigation, the discovery undertaken in this action and the events related to settlement are set forth in the Declaration of Jason L. Solotaroff In Support Of Final Approval Of The Class Action Settlement And An Award Of Attorney's

Fees And Expenses, dated September 30, 2019, ("Solotaroff Declaration" or "Solotaroff Decl."), submitted herewith.

**B.      The Settlement Agreement**

The Settlement creates a total monetary fund valued at approximately $180,000. After payment of the attorneys' fees, claims administrator expenses and the class representative incentive award, if any, approved by the Court, the remainder will be distributed to the class based on the respective Class Member's individual tenure of employment (the number of weeks worked during the Settlement Period), divided by the sum of total work weeks for all Class Members during the Settlement Period.

**C.      Notice To The Class By Direct Mail.**

As set forth in the Declaration of the Claims Administrator, submitted herewith, on July 1, 2019, in accordance with the Preliminary Order, the Settlement Administrator provided timely Notice of the settlement and the claim form by United States Mail to 189 class members.

**D.      The Claims Process**

To date, there have been 62 claims filed prior to the deadline of August 31, 2019 and one untimely claim filed after that date. Of the 62 timely claims, seven challenged the number of weeks worked indicated by Defendants' records as did the untimely claim. The claims administrator requested additional information from those claimants, but none provided information to support the challenge. For the untimely claim, the claims administrator is considering the claimant's reason for the delay and will determine whether to allow the claim and that claimant's challenge to the number of weeks worked. One claim member rescinded his

3

claim.

**E.      Opt-Outs and Objectors**

In accordance with the Preliminary Order, Class members had until August 31, 2019, to opt out of the settlement or to object to the settlement. At this time, there have been no opt-outs or objectors.

## ARGUMENT

**A.      The Settlement Class Satisfies Rule 23.**

Plaintiffs request certification of a Class for settlement purposes, which the parties have agreed to define as:

> All individuals who performed work in a service capacity at Defendants' catered events during the Settlement Period in such trades, classifications and professions that customarily receive gratuities including, but not limited to, servers, waiters, bartenders, captains, bussers, and runners ("Service Employees"). The putative class does not include maintenance workers, corporate officers, managers, salespersons, cooks, food preparers, chefs, dishwashers, directors, clerical, office workers or any other person employed by Defendants whose trade, classification or profession does not customarily receive gratuities.

As set forth herein, the Class meets all requirements of Rule 23 and should be certified for settlement purposes.

1.      Rule 23(a)(l) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

189 persons were identified as Class members from Defendants' records thus making the class size greater than l00 persons. The United States Court of Appeals for the Second Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity"

requirement of Rule23(a)(l). *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,483 (2d Cir. 1995) (internal citation omitted).

> ### 2.     Rule 23(a)(2)-The Claims of the Settlement Class Arise from Common Questions of Law and Fact.

The "commonality" requirement of Rule 23(a)(2) is met "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997) (per curiam). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer,* 138 F.R.D. 594, 599 (S.D. Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

Here, the grievances of the class revolve around the same issue – whether it was lawful for Defendants to pay its service employees a flat fee based on the type of event catered instead of a percentage of the gratuity collected. In *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009), a wage and hour action brought on behalf of restaurant workers, this Court found Rule 23(a)(2) satisfied where, as here, Plaintiffs and the Class members share common issues of fact and law, including whether, "Defendants required Plaintiffs to share their tips with ineligible employees, failed to pay Plaintiffs at the proper overtime rate, ... failed to pay Plaintiffs for hours worked off-the-clock, failed to pay Plaintiffs spread-of-hours pay ... and failed to keep accurate time records." 2009 U.S. Dist. LEXIS 27899, at **10-11; see also, *Torres v. Gristede's Operating Corp*., 2006 U.S. Dist. LEXIS 74039, at **39-40 (S.D.N.Y. Sept. 29, 2006) (Rule 23(a)(2) satisfied in wage and hour action).

3.      Rule 23(a)(3) - Named Plaintiffs' Claims Are Typical Of The Claims Of The
        Settlement Class.

The typicality requirement of Rule 23(a)(3) is met for the exact same reason as the

commonality requirement. This is typical.  "The commonality and typicality requirements tend to

merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and

(3)." *Marisol A*, 126 F. 3d at 376. A claim is typical if the "disputed issue of law or fact

'occup[ies] the same degree of centrality to the named plaintiffs claim as to that of other

members of the proposed class.'" *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d

Cir. 1999) (quoting *Krueger v. New York Tel. Co.,* 163 F.R.D. 433, 442 (S.D.N.Y. 1995)). Here,

the claims of the named Plaintiff and the claims of all Class members derive from Defendant's

same flat fee gratuity arrangement. Accordingly, Plaintiff's claim is based on the same legal

issues as the claims of members of the Class she seeks to represent. See *Mohney*, 2009 U.S. Dist.

LEXIS 27899, at* 11 (Rule 23(a)(3) satisfied in wage and hour action brought on behalf of

restaurant workers "because Plaintiffs' claims arise from the same factual and legal

circumstances that form the bases of the Class Members' claims"); *Damassia v. Duane Reade*,

Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (typicality requirement satisfied for overtime

violation claims). By commencing this action and advancing her own claims, the named Plaintiff

has advanced the claims of the other members of the Class. The typicality requirement has been

satisfied.

4.      Rule 23(a)(4)  Plaintiff and Class Counsel Will Fairly and Adequately Protect the
        Interests of the Settlement Class.

The determination that the "representative parties will fairly and adequately protect the

6

interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiff has any interests antagonistic to the class. *Eisen v. Carlisle & Jacqueline,* 391 F.2d 555, 562 (2d Cir. 1968). Both prongs of the Rule 23(a)(4) adequacy requirement are satisfied here. First, Plaintiffs' counsel, Giskan Solotaroff & Anderson LLP, specializes in plaintiffs' side employment and class action litigation.[1] Second, the named plaintiff has alleged Defendants' violation of the NYLL, the same claims of the class she seeks to represent

    5.    <u>The Settlement Class Is Appropriate Pursuant to Rule 23(b)(3).</u>

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions, and (2) a class action represents a superior method for the fair and efficient adjudication of the controversy.

Here, all members of the Class were subjected to Defendant's flat fee gratuity practices which have been alleged to violate the New York Labor Law. Courts have found the predominance requirement readily satisfied in similar actions alleging failure to pay minimum wage and overtime. See *Mohney*, 2009 U.S. Dist. LEXIS 27899, at * 10-11 (S.D.N.Y. Mar. 31, 2009) (in wage and hour case brought on behalf of restaurant workers, the Court held "[c]ommon factual allegations and a common legal theory predominate over any factual or legal variations among Class Members"); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment"); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *53 (plaintiffs

---

[1] See Firm Resume of Giskan Solotaroff & Anderson LLP attached as Exhibit C to the Solotaroff Decl.

"introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages."); *see also Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307, at *23 (D.N.J. July 10, 2006) ("a similar legal question: whether the alleged failure to pay [plaintiffs] for all hours worked .... violated the applicable state wage and hour laws . . .  predominate over any factual variations").

Indeed, the only individualized issues in this case pertain to the amount of each class member's damages. Individualized damages calculations, however, do not defeat predominance. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 183 (W.D.N.Y. 20005) (collecting cases holding that the damages calculations in overtime litigation does not impact the predominance analysis); *Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *23 (D.N.J. July 10, 2006) (same). The predominance requirement has been met.

In addition, class adjudication is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. See *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *11; *Damassia*, 250 F.R.D. at 161, 164. Plaintiff and the other members of the Class have arguably been deprived of gratuity payments and have limited financial resources with which to prosecute individual actions. Plaintiff is not aware of any lawsuits that have been filed against Defendants by other workers arising from the same allegations. Use of the class action device here will achieve economies of scale for class members, conserve judicial resources by avoiding the expense of repetitive proceedings, and prevent the possibility of inconsistent rulings on similar issues and claims. *See Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *7

(S.D.N.Y. May 28, 2009) (granting Rule 23 class certification of New York state wage and hour claims on behalf of restaurant workers, holding that "[c]lass adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.").

      6.     Certification of the "Hybrid" Rule 23 Class and FLSA Collective Action Is Appropriate.

Courts routinely approve certification of "hybrid" Rule 23 class and FLSA collective actions. *See Clark v. Ecolab, Inc*., 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010); *McMahon v. Olivier Cheng Catering and Events, LLC*, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. I 0, 2009); *Damasia v. Duane Reade, Inc.*, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 24, 2009).

Because all requirements of Rule 23 have been met, the Court should grant certification of the Settlement Class.

      7.     The Settlement Is Fair, Reasonable and Adequate under Rule 23(e).

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must decide whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982). In doing so, the Court is to consider the substantive terms of the settlement, as well as the parties' negotiation process. *Id*. The Second Circuit set forth the standard for consideration of the substantive terms of the settlement under Rule 23(e) in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1997), and requires consideration of nine factors: (i) the complexity,

expense and likely duration of the litigation; (ii) the reaction of the Class to the settlement; (iii)

the stage of proceedings and the amount of discovery completed; (iv) the risks of establishing

liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action

through the trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the

range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the

range of reasonableness in light of all attendant risks of litigation. *Id.*

The Court need not find that each of the nine factors is satisfied; rather, a court "considers

the totality of these factors in light of the particular circumstances." *Foti v. NCO Financial*

*Systems, Inc.*, 2008 U.S. Dist. LEXIS 16511, at *16 (E.D.N.Y. Feb. 20, 2008), citing *In re*

*Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004). Here, consideration

of the *Grinnell* factors weighs in favor of granting final approval of the Settlement.

> a.    *Complexity, Expense, and Duration of the Litigation.*

Through this Settlement, Plaintiffs seek to avoid significant expense and delay and to

ensure a recovery for the Class. "Most class actions are inherently complex and settlement avoids

the costs, delays and multitude of other problems associated with them." *In re Austrian &*

*German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom*

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 200l). This case is no exception: unlawful

conduct and damages would have to be determined event by event over the entire class period.

Any judgment following trial most likely would be appealed, further delaying closure. *See In re*

*American Bank Note Holographies,* 127 F. Supp.2d 418, 425 (S.D.N.Y 2001) ("Add on time for

trial and appeals, and the class would have seen no recovery for years. Class counsel properly

considered this factor as well."). The first *Grinnell* factor thus weighs in favor of preliminary

10

approval.

        b.     *Reaction of the Class.*

At this time, no Class member has opted out of, or requested exclusion from, the settlement. Lack of objection to a settlement strongly favors judicial approval. *See, e.g., In re EVVI Career Coils. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *6 (S.D.N.Y. July 27, 2007); *RMED Int 'l, Inc. v. Sloan's Supermarkets, Inc*., 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections ... may itself be taken as evidencing the fairness of a settlement") (internal quotation omitted).

        c.     *Stage of the Proceedings.*

The stage of the proceedings and the amount of discovery the parties have conducted "are important facts to consider in order to ensure that plaintiffs have had access to material to evaluate their case and assess the adequacy of any settlement proposal." *In re Medical X-Ray Film Antitrust Litig*., 1998 U.S. Dist. LEXIS 14888 at *11 (E.D.N.Y. Aug. 7, 1998). This settlement was reached after a good deal of document discovery had occurred. As a result, the parties had sufficient knowledge of the strengths and weaknesses of the claims to evaluate the merits of settlement. See *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d Cir. 2004) (the proper inquiry is "whether counsel had an adequate appreciation of the merits of the case before negotiating."). This factor weighs in favor of settlement.

        d.     *Risks of Establishing Liability and Damages*

In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re*

*Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted); *see also, In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 at *11 ("In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate [relief] against the inherent risks of litigation."). Here, continued litigation would have presented several significant risks. Defendants would have moved for summary judgment arguing, among other things, that their gratuity practice was lawful. Defendants also could have claimed that depending on the time period worked, some of the employees were benefitted by Defendants' gratuities practices because the flat fees may have been higher than their respective share of the actual gratuity. While Plaintiff believes that some, if not all, of her claims would survive summary judgment and proceed to trial, a trial on the merits here would involve substantial risk because of the fact-intensive nature of proving liability under the FLSA and the New York Labor Laws.

      e.    *Risk in Maintaining the Class Action.*

The settlement was reached before the Plaintiff moved for Rule 23 Class certification. Defendants would likely oppose such a motion by arguing that individual questions, such as whether each plaintiff was harmed by the gratuity arrangement, would defeat class certification. "The risk that certification might be denied weighs in favor of settlement." *Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016, at *12 (S.D.N.Y. Mar. 24, 2008). Any class certification order, moreover, would likely be challenged on a motion for decertification or appealed by Defendants. *In re Medical X-Ray Film Antitrust Litig*., 1998 U.S. Dist. LEXIS 14888 at *14 ("in the absence of settlement, there is no guarantee that defendants will not challenge the maintenance of the class as certified."). Settlement eliminates these risks of establishing and maintaining a class through trial and favors final approval.

    f.  *Defendants' Ability to Withstand a Greater Judgment.*

   It is highly questionable whether Defendants would be able to withstand a greater

judgment. The Old Bermuda Inn is a family owned business and it can be assumed that the

family's assets are limited. Clearly, the "prospect of a bankrupt judgment debtor down at the end

of the road does not satisfy anyone involved in the use of class action procedures." *Banyai v.*

*Mazur*, 2007 U.S. Dist. LEXIS 22342 at *11 (S.D.N.Y. Mar. 27, 2007) (internal citations

omitted)). This factor weighs strongly in favor of final approval of the settlement. *See Velez,*

2007 U.S. Dist. LEXIS 46223 at* 20-21 (that defendant was a small company unlikely to be able

to satisfy a greater judgment weighed in favor of approving settlement of wage and hour

litigation); *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *12 (S.D.N.Y. Mar. 24, 2008) (settlement

of overtime claims approved where, inter alia, it was "uncertain whether Defendants could

satisfy a judgment.").

    g.  *Range of Reasonableness.*

   Under *Grinnell*, the Court is to consider the range of reasonableness of the Settlement in

light of the possible recovery and the range of reasonableness in light of all inherent risks in the

litigation. The adequacy of the Settlement must be judged "not in comparison with the best

possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of the plaintiffs' case." *In re Agent Orange Prod. Liab. Litig*., 597 F. Supp. 740, 762

(E.D.N.Y. 1984). The $180,000 Settlement Fund represents a good recovery given the attendant

risks of litigation. The average payout per class member would be approximately $3000. This is

comparable to, if not substantially better than, the average per-class member settlement amounts

in similar wage and hour cases brought on behalf of restaurant workers. See *Reyes*, 2009 U.S.

Dist. LEXIS 45277, at **4, 8 ($710,000 fund provided an average per-class member settlement amount of approximately $1,624.71, inclusive of attorney's fees.).

Weighing the benefits against the risks associated with continued litigation and trial, the Settlement Fund is reasonable. "It is well established that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers of Justice v. Civil Serv. Comm 'n,* 688 F.2d 615,628 (9th Cir. 1982); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery); *Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving class settlement over objections that recovery was approximately only 1.9% of best possible recovery.). The Settlement Fund falls well within the range of reasonableness - "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689,693 (2d Cir. 1972)).

h.   *The Settlement Was Negotiated at Arm's Length by Experienced Counsel.*

After consideration of the substantive terms of the settlement, the Court must consider the negotiation process to confirm that the Settlement Agreement was free of collusion. "As long as the integrity of the negotiating process is ensured by the Court, it is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997). The settlement is free of collusion. The settlement negotiations were overseen by a neutral third-party mediator, Elliott D. Shriftman, Esq. As set forth in the firm resume attached as Exhibit C to

14

the Solotaroff Declaration, Class Counsel's experience in handling class actions and employment matters further support a finding that the negotiations were free from collusion, and a "presumption of fairness" for the parties' settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at \*16 (no collusion where "settlement was reached through arms-length negotiations by experienced counsel on both sides of the case.").

### B.  Approval of the Settlement of the FLSA Claims Is Also Appropriate

Plaintiffs request that the Court grant final approval of the settlement of the FLSA wage and hour claims.  Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 205 (2d Cir. 2015), parties to an FLSA action cannot privately settle claims under Rule 41(a)(1)(A)(ii) with prejudice without the court's approval.  The parties must satisfy the court that their agreement is "fair and reasonable."  *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420 (KAM)(SMG), 2018 U.S. Dist. LEXIS 12280, at \*5-6 (E.D.N.Y. Jan. 25, 2018)

"In considering whether to approve an FLSA settlement, courts consider whether the agreement 'reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Li Ming Yan v. China Gourmet Food Inc.*, No. 17 CV 1925 (CLP), 2018 U.S. Dist. LEXIS 119064, at \*4 (E.D.N.Y. July 17, 2018) (citing *Le v. Sita Info. Networking Computing USA, Inc.*, No. 07 CV 86, 2008 U.S. Dist. LEXIS 46174, at \*1-2 (E.D.N.Y. June 12, 2008)); *accord Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353-54, n.8 (11th Cir. 1982) (holding that in a FLSA action, "when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed

15

issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

Here, the settlement reflects a reasonable compromise of contested issues under the FLSA, is the product of arm's length negotiations between adversarial parties, and was overseen by a third-party mediator and a Magistrate Judge.  The court should grant approval.  *See Shamsundar v. FCS Grp. LLC*, No. 18 CV 2514 (KAM) (LB), 2019 U.S. Dist. LEXIS 87368, at *6 (E.D.N.Y. May 22, 2019) (approving FLSA where the "parties represent that the settlement is the product of arm's-length negotiations between counsel before an experienced FLSA mediator from the Eastern District Mediation Panel"); *Vidal v. Eager Corp.*, No. 16 CV 979, 2018 U.S. Dist. LEXIS 42113, at *2 (E.D.N.Y. Mar. 13, 2018) (terms of a settlement "hammered out during mediation . . . suggests [that the terms are] the product of arm's length bargaining and that there is a reduced risk of collusion between [the parties.]").

### C.  Class Counsel's Request For Attorney's Fees And Reimbursement of Expenses Should Be Approved.

Class Counsel seeks attorney's fees and reimbursement of expenses, including the expense of the claims administrator, in the total amount of $60,000. In accordance with the Stipulation of Settlement, Defendants will not oppose Class Counsel's motion for an award of attorney's fees and expenses up to the maximum total amount of $60,000. Class Counsel seeks $54,408 in attorney's fees and $5592 in expenses. Class counsel has prosecuted this action entirely on a contingency basis. Class Counsel has spent more than 136 attorney and paralegal hours prosecuting this case, for a total lodestar (hourly rates multiplied by hours spent) of $65,535. Class Counsel's fee request is less than their total lodestar and represent approximately 30 percent of the total settlement fund of $180,000.

16

The Second Circuit has articulated six factors to assess the reasonableness of a fee request in the class action context: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Applying the *Goldberger* factors here strongly supports the award of attorneys' fees sought by Class Counsel.

### 1.    The Time and Labor Expended.

Class Counsel's lodestar through September 29, 2019 is approximately $65,535. This reflects approximately 136 attorney and paralegal hours expended over more than a year of litigation.[2] In calculating the lodestar, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id*. The work performed by Class Counsel in this action and the hourly rates charged are set forth in the Solotaroff Declaration submitted herewith. Here, Class Counsel's attorney's fee request seeks less than the total lodestar. Class Counsel's fee request in light of the total hours expended is more than reasonable.

### 2.    The Magnitude and Complexity of the Litigation.

The legal issues presented in this wage and hour action brought under FLSA and the New York Labor Law are complex and difficult to prove. As the Supreme Court has recognized, "FLSA claims typically involved complex mixed questions of fact and law. These statutory

---

[2] Should the Court require additional information, Class Counsel will provide the underlying

questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Askansas-Best Freight Sys. Inc.*, 450 U.S. 728, 743 (1981). This complexity inherent in wage and hour cases weighs in favor of approving Class Counsel's fee request. *See Frank*, 228 F.R.D at 189 (mixed questions of fact and law support court's award of attorney's fees representing 38% of the common fund); *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *14-19 (awarding attorney's fees of 33% of the common fund in FLSA and the New York Labor Law case brought on behalf of restaurant workers).

      3.    <u>Risk of Litigation.</u>

Class Counsel prosecuted this action entirely on a contingency basis, with no assurance of being paid for their efforts. *See In re Crazy Eddie*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8% of settlement fund as attorneys' fees; "[t]he attorneys' fees requested were entirely contingent upon success. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation."). The facts of this case presented substantial risks of recovery in terms of whether the gratuity arrangement adversely affected the class. *See Brunson v. The City of New York*, 2000 U.S. Dist. LEXIS 18434, at *13 (S.D.N.Y. Dec. 21, 2000) (where class counsel "faced significant obstacles in the lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs," class counsel was entitled to a 50% premium for their achievement of a settlement).

      4.    <u>Quality of Representation.</u>

"To determine the 'quality of the representation,' courts review, among other things, the

_____

daily time records either in camera or in redacted form at the Court's direction.

recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans,* 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007). As discussed above, the $180,000 all cash Settlement represents a very good recovery given the attendant risks of litigation, and Class Counsel is experienced in employment and class litigation.

5.     The Fee Request In Light Of The Result Achieved

Class Counsel seeks attorney's fees of approximately 30% of the $180,000 Settlement Fund. In the Second Circuit, courts commonly approve percentage awards of between 20% to 33.3% of the class recovery. *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming fees of 30% of recovery); *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *16 (awarding fees of 33% of the fund in wage and hour litigation); *In re NASDAQ Market- Makers Antitrust Litig.*, 187 F.R.D. 465,486 (S.D.N.Y. 1998) and cases cited therein (recognizing that 25 percent of the common fund is typically the benchmark for cases involving settlement funds from one to fifty million dollars.)

Where, as here, the common fund is less than $1 million, courts often find that requests for a greater percentage of the fund are reasonable. See, e.g., *Frank*, 228 F.R.D. at 189 ("[D]ue to the relatively small settlement involved here [$450,000], the requested fee award [of 40%] is necessary to compensate counsel adequately,"); *Gilliam*, 2008 U.S. Dist. LEXIS 23016 at *15 (S.D.N.Y. Mar. 24, 2008) (in overtime litigation, this Court held "the payment of attorneys' fees under the settlement is reasonable. It provides that class counsel is entitled to one-third of the common fund [of $450,000] after deduction of legal costs, which is consistent with the norms of class litigation in this circuit."); Velez, 2007 U.S. Dist. LEXIS 4622, at *25 (noting "the relatively small size of settlement fund" in granting a 31% fee award).

19

### D.  Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's fee request. Indeed, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393,396 (S.D.N.Y 1999). Both the FLSA and the New York  Labor Law are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling,* 324 U.S. 490,493 (1945) (recognizing the FLSA's objective to ensure that every employee receives "a fair day's pay for a fair day's work."). The remedial purpose of these statutes is advanced by providing adequate compensation for attorneys who commence wage and hour litigation on behalf of employees. The class action device, moreover, also has been recognized as a safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). An adequate award to Class Counsel helps to ensure that "plaintiffs' claims [will] likely ....be heard." *Frank*, 228 F.R.D. at 189.  If courts denied "fees sufficient to compensate counsel for at least a substantial portion of the work performed, no attorneys... would likely be willing to take on ... small-scale class actions[.]" Id.

Class Counsel's fee request of $54,408, or 30% of the Settlement Fund, and representing less than Class Counsel's lodestar, is modest and reasonable and should be approved. Class Counsel's request for reimbursement of expenses of $5592, including the claims administrator's expenses, incurred in the prosecution of this action, also should be approved.

### E.  The Incentive Award Should be Approved.

Pursuant to the Section 3.4 of the Settlement Agreement, Plaintiff requests approval of a $9000 award to Ms. Monaco.

As courts have held:

> Incentive awards are not uncommon in class action cases and are within the discretion of the court. In calculating incentive fees, courts consider: the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added [**14] value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.
>
> The relevant inquiry is whether the particular case presents special circumstances justifying an incentive award. While the majority of reported decisions granting incentive awards arise out of securities litigation, such awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. Although there is no specific measure for determining when an incentive award is justified, courts consistently focus on the existence of "special circumstances."

*Ortiz v. Chop't Creative Salad Co.*, No. 13 Civ. 2541, 89 F. Supp. 3d 573, 2015 U.S. Dist. LEXIS 22772, 2015 WL 778072, at *3 (S.D.N.Y. Jan. 16, 2015) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)) (internal quotation omitted).

Here those special circumstances are present. But for Ms. Monaco coming forward, Defendants' alleged violations would not have been brought forward and the case would not have been brought. Ms. Monaco, who has worked in the food service industry for many years, took a significant risk that she would not be hired in the future by bringing this action. Ms. Monaco and her life partner took time off from work and their personal lives to meet with counsel, review records and attend the mediation. Her efforts were instrumental in the success

21

achieved for the class.

The $9000 award is commensurate with awards approved in similar cases. It constitutes five percent of the settlement fund. *See Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *61 (S.D.N.Y. Sep. 16, 2011) (approving service awards of $10,000 per representative which together constituted ten percent of settlement fund); *Flores v. Anjost Cor*p., 2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 28, 2014) (awarding service awards of $25,000 for five plaintiffs together constituting more than ten percent of settlement fund).

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully request that the Court grant final approval of the Settlement, certify the Settlement Class, award Class Counsel's fees and expenses, and enter the accompanying proposed Final Judgment and Order.

Dated: October 1, 2019
    New York, New York

GISKAN SOLOTAROFF & ANDERSON LLP

/s

By: _____
    Jason L. Solotaroff
    Amy E. Robinson
    90 Broad Street, 10th Floor
    New York, NY 10004
    (212) 847-8315
    *Attorneys for Plaintiff*

22