# GISKAN SOLOTAROFF & ANDERSON LLP
### Attorneys at Law

October 23, 2019

**BY ECF**
Honorable Vera M. Scanlon, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:**    *Monaco v. Historic Old Bermuda Inn, et al.*
              **Case No. 18-cv-04101 (VS)**

Dear Judge Scanlon:

This firm represents Plaintiff Gabrielle Monaco and serves as Class Counsel in the above referenced matter. I submit this letter jointly with defense counsel, to respond to the issues raised by the Court during the October 2, 2019 Fairness Hearing.

Procedural Matters

The Court raised a number of procedural matters at the hearing, to which the parties have prepared the following responses, along with documentary support.

1. *Opt-in Statements*: The Court ordered Class Counsel to file all Opt-in Statements. Class Counsel respectfully refers the Court to **Exhibit A**, enclosed.

2. *Late Claim*: The Court ordered that the one late claim be accepted. The late claim has been accepted, and is included in **Exhibit A**.

3. *Expense Report*: The Court ordered Class Counsel to submit its expense report. Class Counsel respectfully refers the Court to **Exhibit B**, enclosed. Additionally, Class Counsel submit an updated Time Report / Lodestar Chart as **Exhibit C**.[1]

4. *Undelivered Claims*: The Court ordered the parties to confirm that all undeliverable claims were re-mailed. Class Counsel contacted the Claims Administrator, who confirmed that all undelivered claims were re-mailed. See **Exhibit D**.

---

[1] At the suggestion of the Court during the October 2 Fairness Hearing, Class Counsel has adjusted their rates to reflect rates that are commonly approved in this District. *See Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, No. 10-CV-2262 (DRH) (AYS), 2019 U.S. Dist. LEXIS 102840 (E.D.N.Y. June 18, 2019). Should the Court require additional information or details regarding the hours worked on this case, Class Counsel will provide a supplemental report.

<u>Substantive Issues</u>

The Court also identified two substantive legal concerns and ordered the parties to address them in the joint letter.

**Issue 1**: The Court highlighted some concerns with the effect of the previously agreed upon terms of the Settlement Agreement, and specifically, sections 2.4 (D) and 3.8 (A) on Class Members who do not timely and correctly become Authorized Claimants or Opt-outs ("Non-Claiming Class Members").

**Response:** After researching the issue, including, but not limited to the *res judicata* effect of hybrid collective/class action settlements, the parties agreed to revise the release language of sections 2.4 (D) and 3.8 (A) as it applies to Non-Claiming Class Members. These sections are revised to explicitly remove claims arising under the Fair Labor Standards Act from the Non-Claiming Class Members' release of Defendants with prejudice, and are excerpted below, with the newly added language in brackets and underlined.  The full settlement agreement containing this new language is enclosed as **Exhibit E**.

2.4     Opt-out: Class Members Who Opt Out
(D)       Any Class Member who does not timely and correctly submit an Opt-out Statement [(or does not become an Authorized Claimant)] pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement, shall be bound by the Final Order, and shall have any Released Class Claims released and dismissed with prejudice [with the exception of claims arising under the Fair Labor Standards Act]. Only those Class Members who timely and correctly complete and return a Claim Form postmarked or received by the Settlement Claims Administrator by the Bar Date will be deemed Authorized Claimants. Defendants shall have no obligation to pay into the QSF any amounts allocated to Class Members who do not submit a timely and correct Claim Form as set forth in this Agreement unless otherwise ordered by the Court or agreed upon by the Parties.

3.8     Release of Claims.
(A)       By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement each individual Class Member who does not timely opt-out [(or does not become an Authorized Claimant)] pursuant to this Agreement, on behalf of himself/herself, his/her heirs, representatives, successors, assigns, and attorneys, forever and fully releases and discharges Defendants and Releasees from all Released Class Claims [with the exception of claims arising under the Fair Labor Standards Act].

**Issue 2:** The Court noted that the reversion structure of the Settlement Agreement creates a potential conflict between Class Counsel and the Class Members, *see Int'l Precious Metals Corp. v. Waters*, 120 S. Ct. 2237 (2000), and *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401 (S.D.N.Y. Jan. 29, 2019), and ordered Class Counsel to address the issue of whether the reversionary fund "decouples the incentive structure."

**Response:** Class Counsel agrees with the Court that theoretically, a reversion structure has the potential to create a conflict of interest.  In this instance, however, no such conflict can or should be inferred, for several reasons.

Courts in this District and others have compared Class Counsel's fee award to the actual amount in the settlement fund that is claimed by Class Members.  *See, e.g., In re Arakis Energy Corp. Sec. Litig.*, 95 CV 3431 (ARR), 2001 U.S. Dist. LEXIS 19873, at *47-49 (E.D.N.Y. Aug. 17, 2001).  This analysis is carried out as one of the public policy considerations inherent in the *Goldberger* analysis.  Courts have rightfully raised the issue of a potential conflict of interest when Class Counsel seeks a fee award that well exceeds the amount to be paid out to Class Members, and when the numbers are extraordinarily high.  *See Int'l Precious Metals Corp.*, 120 S. Ct. 2237 (District Court approved attorneys' fees in the amount of $13,333,333, where actual distribution to class members was $6,485,362.15); *Grice*, 363 F. Supp. 3d 401 (out of a common fund of $1,192,275, $710,850 was to be distributed to class members, and Class Counsel moved for $397,387 in attorney's fees); *In re Arakis Energy Corp. Sec. Litig.*, 2001 U.S. Dist. LEXIS 19873 (of the final settlement amount of  $24,000,000, $7,200,471.94 was claimed by Class Members and $8,000,000 was requested for attorneys' fees).  As the *Arakis* court noted: "caution is required where, as here, counsel is seeking an award of fees that is not only one-third of the total settlement but more than 100% of the amount actually paid to the class members."  2001 U.S. Dist. LEXIS 19873, at *49.

This case is distinguishable from the cases cited above and from other cases where attorneys' fees exceed the reversionary fund.  First, in this case both the settlement fund and the potential attorneys' fee award are quite modest compared to the funds and attorneys' fees awards in *Precious Metals*, *Grice*, and *Arakis*.  Here, the settlement fund totals $180,000.  After subtracting attorneys' fees and costs (which will be deducted from attorneys' fees), the incentive award, and the set-aside for late claims, $106,000 remains in the reversionary fund.  Approximately 34% of the total class weeks have been claimed,[2] which will result in a distribution of approximately $36,500 to Class Members.  Class Counsel seeks $60,000 in attorneys' fees, which includes costs totaling $5,591.62, leaving Class Counsel with $54,408.38 in a potential fee award.  Although Class Counsel's award would exceed the distribution to Class Members by approximately $18,000, the raw numbers are not nearly as stark as those presented in *Precious Metals*, *Grice*, and *Arakis*, and the fee award here is not "more than twice the amount of the class' actual recovery," which was the situation presented in *Precious Metals*.

Second, as analyzed in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Final Approval, the other five *Goldberger* factors used to assess the reasonableness of a fee

---

[2] Per the Claims Administrator, Claimants' weeks total 4,526.  Total Class weeks total 13,146.  The first number divided by the second number yields 34.43%.

request[3] all favor Class Counsel's fee award request. Here, a lodestar crosscheck supports an attorneys' fee award of $60,000. Class Counsel's lodestar through October 21, 2019, is approximately $64,420. *See* **Exhibit C**. This reflects approximately 169 attorney and paralegal hours expended over more than a year of litigation. That Class Counsel's fee request is lower than the lodestar demonstrates that, if the award is approved, it would not result in a windfall for Class Counsel, since it undertook this matter on a purely contingency fee basis.

Third, Class Counsel has worked diligently to ensure that as many potential claimants as possible receive an award, and no inference of collusion among Class Counsel and Defense Counsel can be drawn based on counsels' actions. There is no question that notice was effective, as every member of the class was contacted by the class administrator. Class Counsel worked to ensure that the maximum number of claimants would participate by fielding numerous calls from potential claimants, answering questions about the claims process, and encouraging potential claimants to submit their claim forms. Indeed, those efforts may have paid off, as the participation rate was exceptionally high, with 34% of the total class weeks claimed by Class Members, which is "well above average in class action settlements." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (citing 2 McLaughlin on Class Actions § 6:24 (8th ed.)). *See also Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 U.S. Dist. LEXIS 179900, at *5 (W.D.N.Y. Dec. 29, 2016) ("43% of the class made a claim, an extraordinary claims rate that demonstrates that the Class views the Settlement favorably"); *Chambery v. Tuxedo Junction Inc.*, No. 12-cv-06539 EAW, 2014 U.S. Dist. LEXIS 101939, at *16 (W.D.N.Y. July 25, 2014) (stating that a 37% opt-in rate "is an unusually high participation rate for a claims made settlement agreement" and noting that "claims made settlements regularly yield response rates of 10 percent or less") (internal quotes and citations omitted). Not a single class member objected, and there have been no opt-outs. The strong participation rate, and Class Counsel's efforts to ensure this result, counsels against any suggestion of a conflict of interest.

On behalf of all parties, I thank the Court for its time and consideration.

Respectfully submitted,

/s/

Amy E. Robinson, Esq.

cc:     All counsel (by ECF)

---

[3] The other five factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; and (5) the requested fee in relation to the settlement. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).