UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABRIELLE MONACO, on behalf of herself and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>- v -<br><br>THE HISTORIC OLD BERMUDA INN, INC., and JOHN VINCENT SCALIA, SR.,<br><br>Defendants. | **Civ No.:** 18-04101 |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff GABRIELLE MONACO ("Named Plaintiff") on behalf of herself and the members of the putative Class of individuals (as hereinafter defined "Plaintiffs") and Defendants HISTORIC OLD BERMUDA INN, INC., JOHN VINCENT SCALIA, SR., and/or any other entities affiliated with or controlled by HISTORIC OLD BERMUDA INN, INC., and their officers, directors, agents and employees (collectively, "Defendants," and together with the Named Plaintiffs, the "Parties").

## RECITALS AND BACKGROUND

A.   Named Plaintiff filed a Collective Action Complaint, which is now pending in the United States District Court, Eastern District of New York (the "Court"), designated as Case No. 18-cv-04101 (the "Action").

B.   Defendants have defended and intend to vigorously contest each and every claim in the Action, deny all material allegations of the Action, as to which Defendants allege numerous meritorious defenses. Defendants, without admitting any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to the Action.

C.   Plaintiff's Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiff and putative Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might

result in a recovery that is less favorable and that would not occur for several years, and in light of the possibility of regulations that have previously been proposed by the United States Department of Labor that may have an impact on the rights asserted in this Action, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and putative Class Members.

D.  Named Plaintiffs and Defendants, by and through their respective counsel, have engaged in extensive settlement discussions including private mediation on December 12, 2018 with Elliott Shriftman, Esq. in connection with the potential resolution of the Action. Named Plaintiff, the Class and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

E.  Strictly for purpose of settling this Action, and without admitting any wrongdoing or liability, Defendants agree to class certification under Rule 23 of the Federal Rules of Civil Procedure and collective certification under § 207 of the Fair Labor Standards Act concerning the Settlement Class as defined in Section 1.5 of this Agreement.

F.  The Parties agree that if this Agreement is terminated or not consummated for any reason pursuant to Section 2.8 of this Agreement, the Parties will stipulate to decertify the class. Upon decertification, the Action will proceed as if this Agreement had not been executed.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

1.  **DEFINITIONS**

    1.1    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

    1.2    **Authorized Claimant.** "Authorized Claimant" means a Class Member or the authorized legal representative of such member, who timely and correctly files a Claim Form in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check.  Named Plaintiff is deemed an Authorized Claimant upon execution of this Agreement and need not return a Claim Form.

    1.3    **Bar Date.**  "Bar Date" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form in accordance with the terms of this Agreement. Subject to the Court's approval and the provisions of Section 2.3(E), the Bar Date shall be (1) no later than sixty (60) days after the initial mailing of Notice by the Settlement Claims Administrator, or (2) if Class Members did not receive the Notice or were unable to file the Claim Form within 60 days due to change of address, military service, hospitalization or other extraordinary circumstances, the Class Member shall have additional time to file the Claim Form so long as it is filed no later than thirty (30) days before the Fairness Hearing.

    1.4    **Claim Form and Release**.  "Claim Form" or "Claim Form and Release" means the form, a copy of which is attached to the Notice of Proposed Settlement, which putative Class Members must sign and return postmarked by the Bar Date.

    1.5    **Class and Class Member.** "Class" (collectively) and/or "Class Member" (individually) means:  All individuals who performed work in a service capacity at Defendants' catered events during the Settlement Period in such trades, classifications and professions that customarily receive gratuities including, but not limited to, servers, waiters, bartenders, captains, bussers, and runners ("Service Employees"). The putative class does not include maintenance workers, corporate officers, managers, salespersons, cooks, food preparers, chefs, dishwashers, directors, clerical, office workers or any other person employed by Defendants whose trade, classification or profession does not customarily receive gratuities.

    1.6    **Class Counsel.**  "Class Counsel" or "Plaintiff's Counsel" means GISKAN SOLOTAROFF & ANDERSON LLP, 90 Broad Street, 3rd Floor, New York, NY 10004.

    1.7    **Class List.**  "Class List" means a list in electronic format, preferably Excel, which includes the names, last known addresses, social security numbers, telephone numbers, e-mail addresses, and employment tenure for each respective Class Member.

    1.8    **Costs and Fees.**  "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses; Settlement Claims Administrator's fees and costs; Employer Payroll Taxes; Mediator fees and costs incurred subsequent to the execution of the Agreement, if applicable; the Reserve Fund; and Service Award.

**1.9**  **Court.**  "Court" means the United States District Court, Eastern District of New York.

**1.10**  **Days.**  "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

**1.11**  **Defendants**.  "Defendants" means HISTORIC OLD BERMUDA INN, INC., JOHN VINCENT SCALIA, SR.; and/or any other entities affiliated with or controlled by HISTORIC OLD BERMUDA INN, INC.; JOHN VINCENT SCALIA, SR., and their officers, directors, agents and employees.

**1.12**  **Defendants' Counsel.**  "Defendants' Counsel" means Pitta LLP, 120 Broadway, 28th Floor, New York, NY 10271.

**1.13**  **Employer Payroll Taxes**. "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Action, including FICA, FUTA, and SUTA obligations.

**1.14**  **Fairness Hearing**.  "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

**1.15**  **Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Award, approving distribution of Costs and Fees, and dismissing the Action with prejudice, among other things.

**1.16**  **Final Effective Date**.   Provided no appeal is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Order. If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to move for leave to appeal or to file a notice of appeal with respect to any appellate decision affirming the Final Order has expired; and (4) if a motion for leave to appeal or a notice of appeal of an appellate decision is filed, the motion has been denied or the appeal dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

**1.17**  **Final Settlement Amount.**  "Final Settlement Amount" means the sum of the Net Settlement Fund plus Court-approved Costs and Fees.

**1.18**  **Gross Settlement Fund.**  "Gross Settlement Fund" means a potential sum of One Hundred Eighty Thousand Dollars ($180,000.00) inclusive of Cost and Fees, the agreed-upon amount to be utilized for calculation and distribution purposes, for complete and final resolution of the Action, subject to the right to terminate the Agreement as set forth in Section 2.8.

**1.19    Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 3.5 prior to any deduction for taxes.

**1.20    Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after taxes are deducted pursuant to Section 3.1(C).

**1.21    Named Plaintiff.** "Named Plaintiff" refers to Gabrielle Monaco.

**1.22    Net Settlement Fund.** "Net Settlement Fund" means the aggregate balance to be distributed to all Authorized Claimants after the deduction of Costs and Fees.

**1.23    Mediator.** "Mediator" means Elliott Shriftman, Esq.

**1.24    Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as approved by Defendants and authorized in the Preliminary Approval Order.

**1.25    Objector.** "Objector" means an individual Authorized Claimant who timely and correctly files an objection to this Agreement, not including any individual who opts out of this Agreement.

**1.26    Opt-out Statement.** "Opt-out Statement" means a written, signed statement that an individual Class Member submits stating that he or she has elected to exclude himself or herself ("opt out") from the settlement and not be included in this Agreement.

**1.27    Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) directing the manner and timing of providing Notice to the Class Members; and (iii) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the mailing of Notice, and the Fairness Hearing date.

**1.28    Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Preliminary Approval Order and the Final Order.  Interest, if any, earned in the QSF will become part of the Net Settlement Fund to be distributed to the Authorized Claimants.

**1.29    Released Class Claims.** "Released Class Claims" means all claims alleged in the Complaint, including those based on or under Federal Law, the Fair Labor Standards Act, New York State law, the New York Hospitality Industry Wage Order, and/or common law, arising during the Settlement Period, whether known or unknown, that were or could have been asserted in this Action. The Released Class Claims include, but are not limited to, statutory, constitutional, contractual or common law claims for unpaid gratuities, service charges, maître d' tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.

**1.30**  **Releasees.**  "Releasees" means Defendants, their predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliates, and related entities, representatives, and the officers, shareholders, directors, partners, managers, employees, attorneys, and agents, past and present, of each of the aforesaid entities and individuals, heirs, executors, administrators, assigns, attorneys, and agents, and all persons acting under, by, through or in concert with any of them.

**1.31**  **Represented Service Charges.**  "Represented Service Charges" means the aggregate total of all amounts billed, assessed, or charged and collected on executed catering contracts during the Settlement Period that may be considered charges purported to be gratuities within the meaning of New York Labor Law § 196-d and the New York Hospitality Industry Wage Order.

**1.32**  **Reserve Fund.**  "Reserve Fund" is an amount of no more than $5,000 set aside in the QSF in case of error or omission to be paid and corrected via the mechanisms outlined in Section 3.1(B).

**1.33**  **Service Award.**  "Service Award" means that portion of the Final Settlement Amount, if any, requested by the Named Plaintiff and approved by the Court as a reasonable incentive award to the Named Plaintiff for representing the interests of the Class Members, for communicating with Class Counsel, and otherwise representing the interests of other Class Members during the course of this litigation.

**1.34**  **Settlement Claims Administrator.**  "Settlement Claims Administrator" means the qualified administrator selected pursuant to Section 2.1.

**1.35**  **Settlement Checks.**  "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount.

**1.36**  **Settlement Period**.  "Settlement Period" means July 18, 2012 through the date the Court preliminarily approves the settlement.

## 2.  PRELIMINARY APPROVAL AND PROCEDURE

**2.1**  **Settlement Claims Administrator**

    **(A)**  **Retention.** Within fifteen (15) days after the filing of a Preliminary Approval Motion, Class Counsel shall engage a Settlement Claims Administrator.

    **(B)**  **Funding Settlement Claims Administrator.** The costs and expenses incurred by the Settlement Claims Administrator shall be paid from the Final Settlement Amount as approved by the Court.

    **(C)**  **Responsibilities of Settlement Claims Administrator.** Plaintiff shall engage the Settlement Claims Administrator to perform the following tasks:

        (i)      preparing, printing and disseminating to Class Members the Notice and Claim Forms;

(ii)    performing a skip trace and resending, within one (1) day of receipt, any Notice and Claim Form returned without a forwarding address, or resending to those with a new forwarding address;

(iii)    responding to inquiries from respective parties regarding requests or communications made by the Parties;

(iv)    promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives;

(v)    receiving, retaining and reviewing the Claim Forms submitted by Class Members;

(vi)    keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed;

(vii)    preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs;

(viii)    mailing Service Awards and Settlement Checks in accordance with this Agreement and the Final Order;

(ix)    paying all of Defendants' obligations for Employer Payroll Taxes, including issue the W-2 and 1099 Forms for all amounts paid from the Final Settlement Amount;

(x)    referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein;

(xi)    responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein;

(xii)    promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator;

(xiii)    maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail and any and all other actual or attempted written or electronic communications with Class Members;

(xiv)    confirming in writing to counsel for the Parties and the Court its completion of the administration of the settlement;

(xv)    timely responding to communications from the Parties and their counsel;

(xvi)    providing all information, documents and calculations necessary to confirm the Final Settlement Amount; and

(xvii)    such other tasks as the Parties mutually agree upon.

**(D) Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

**2.2    Preliminary Approval Motion**

**(A)** Within thirty (30) days of complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Claim Form, (3) the proposed Preliminary Approval Order, and (4) an executed version of this Agreement. In addition, the Preliminary Approval Motion may be accompanied by a statement from the Mediator setting forth his preliminary recommendation that the proposed economic terms of the Agreement are the product of bona fide arms-length negotiations and represent a fair, adequate and reasonable compromise of the claims in the Action. Within fifteen (15) days of the approval of this Agreement by the Court, Defendants shall be provided with a copy of the Preliminary Approval Motion and the Mediator's statement and shall be given ten (10) days to review, suggest changes, and approve all of the above-listed documents.

**(B)** The Preliminary Approval Motion will seek the setting of a date for individuals to submit Claim Forms, Opt-out Statements and/or object to this Agreement, which date shall be sixty (60) days from the initial mailing of Notice and Claim Forms to the Class Members by the Settlement Claims Administrator, and for a Fairness Hearing on the earliest practicable date.

**(C)** In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Awards; and (5) authorize distribution and payment to the Authorized Claimants.

**2.3    Notice and Claim Forms to Class Members**

**(A)    Class List to Counsel.** Within fifteen (15) days after the entry of the Preliminary Approval Order, or as otherwise ordered by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator and Class Counsel with the Class List. Prior to the production of the Class List, the Settlement Claims Administrator shall execute an agreement, in a form acceptable to Defendants, not to use or disclose the information from the Class List except as is necessary to perform the services required of the Settlement Claims Administrator or to effectuate the terms of this settlement procedure under this Agreement. Class Counsel shall destroy the Class List and the data and information contained in the Class List if this Agreement is not finally approved by the Court or is terminated as set forth in Section 2.8.

**(B)    Class List Documentation.** At least fifteen (15) days after the entry of the Preliminary Approval Order, or as otherwise ordered by the Court, Defendants shall provide Class Counsel with copies of W-2s for all Class Members. Class Counsel warrants that they shall not use this information to solicit Class members to participate in this settlement or in the Action. Class Counsel further warrants

that they shall not use this information to solicit any individual identified in the Class List to commence any other litigation, administrative proceeding, or the like against Defendants, during the pendency of this Action or at any time thereafter.

**(C)    Notice.** The Notice will inform Class Members about this settlement, and will also advise them of the opportunity to object to, opt-out of, or participate in the settlement, and to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order, or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail and via e-mail, the Court-approved Notices and Claim Forms.

**(D)    Skip Trace and Re-mailing.** If a Claim Form is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain a current address, including one skip trace on returns and shall re-mail the Claim Form to such address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who requests them after the initial mailing of Notice and before the Bar Date. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notices and Claim Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the QSF.

**(E)    Bar Date.** To be deemed an Authorized Claimant, Class Members must postmark, email, or fax a signed Claim Form to the Settlement Claims Administrator by the Bar Date. The Bar Date shall be (i) sixty (60) days from the date of the initial mailing or as otherwise set by the Court, and (ii) an additional time for any Class Members who did not receive the Notice, or were unable to file a timely Claim Form due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances so long as the Claim Form is filed no later than 30 days prior to the Fairness Hearing. If an envelope does not contain a postmark, it shall be deemed received on the date that the Class Administrator stamps the envelope and Claim Form as "received."

**(F)    Named Plaintiff**. Named Plaintiff is deemed an Authorized Claimant and need not file a Claim Form. The Parties agree that if this Agreement is terminated or not consummated for any reason pursuant to Section 2.8, the Parties will stipulate to invalidate Named Plaintiff's status as Authorized Claimant.

**2.4    Opt-out: Class Members Who Opt Out**

**(A)    Class** Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement ("Opt-out Statement"). In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and a statement indicating his or her intention to opt-out, such as: "I opt out of the Old Bermuda Inn wage and hour settlement." To be effective, an

Opt-out Statement must be postmarked by United States Postal Service on or before the Bar Date. Except as otherwise provided herein, for any deadlines herein based on a postmark date, in the event there is no postmark date of a document mailed by a Class Member, it shall be presumed that the document was mailed three days prior to the dated received by the Settlement Claims Administrator, excluding any Sunday or holiday for which U.S. Postal Service is not provided. It is the responsibility of the Class Member who seeks to opt-out to retain a copy of the Opt-out Statement and proof of timely delivery.

**(B)** The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

**(C)** The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendants' Counsel not later than three (3) days after receipt. The Settlement Claims Administrator shall also attach copies of any Opt-out Statements to its affidavit in verifying the claims administration process prior to the Fairness Hearing. The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

**(D)** Any Class Member who does not timely and correctly submit an Opt-out Statement [(or does not become an Authorized Claimant)] pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement, shall be bound by the Final Order, and shall have any Released Class Claims released and dismissed with prejudice [with the exception of claims arising under the Fair Labor Standards Act]. Only those Class Members who timely and correctly complete and return a Claim Form postmarked or received by the Settlement Claims Administrator by the Bar Date will be deemed Authorized Claimants. Defendants shall have no obligation to pay into the QSF any amounts allocated to Class Members who do not submit a timely and correct Claim Form as set forth in this Agreement unless otherwise ordered by the Court or agreed upon by the Parties.

**2.5    Objectors: Authorized Claimants Who Object to Settlement.**

**(A)** Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing and validly file a Claim Form by the Bar Date. To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone numbers of the Class Member making the objection. The Settlement Claims Administrator will

stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice and Claim Form mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection. The Settlement Claims Administrator shall also file the date-stamped originals of any and all objections with the Court.

**(B)**  Any Authorized Claimant who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections. An Objector may withdraw his or her objections at any time. Any Class Member who has elected to opt-out may not submit objections to the settlement.

**(C)**  The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

## 2.6    List and Calculations to Counsel

**(A)**  No later than twenty-one (21) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel: (a) a list of all Authorized Claimants, (b) a list of all Objectors, and (c) a list of all Class Members who timely submitted an Opt-out Statement. Throughout the period of claims administration, the Settlement Claims Administrator shall provide weekly reports to the Parties upon their request regarding (i) the status of the mailing of the Notices and Claim Forms to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or expected distribution of the Settlement Checks, and (iv) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a weekly update on the number of Authorized Claimants, Objectors, and Opt-outs.

## 2.7    Fairness Hearing and Application for Final Approval and Dismissal.

**(A)**  After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a report from the Mediator, a report from the Settlement Claims Administrator, a report from the CPA, if any, an application for attorneys' fees, and supporting affidavits and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Order.  Defendants' Counsel shall be given at least seven (7) days to provide suggestions and comments to the terms, form, and content of the Application for Final Approval or proposed Final Order before it is filed with the Court.

**(B)** At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) enjoin all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants and any Service Award to the Named Plaintiff as described in this Agreement; (4) order the Costs and Fees to be paid from the QSF; (5) order the Settlement Claims Administrator to satisfy the employer obligations to pay all Employer Payroll Taxes from the QSF; (6) dismiss this Action with prejudice, and release the Released Class Claims as against Defendants and Releasees; (7) enter a Final Order in accordance with this Agreement; and (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**(C)** The Final Order may further order the Settlement Claims Administrator to: (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, and (2) retain copies of all of the endorsed Settlement Checks.

**2.8    Termination of Agreement.**

**(A)    Procedures for Termination.**

(1) No later than twenty-five (25) days prior to the Fairness Hearing or as soon as practical, the Settlement Claims Administrator shall provide notice by email to Class Counsel and Defendants' Counsel of the Final Settlement Amount, together with any available supporting documents including an Excel spreadsheet that designates each Authorized Claimant, his/her allocated share, and the appropriate totals and calculations to confirm the Final Settlement Amount ("Notice of Final Settlement Amount").

(2) In the event that the Final Settlement Amount exceeds One Hundred and Eighty Thousand Dollars ($180,000.00), the Parties as soon as practical will convene a mediation session with the Mediator, who will make a recommendation, which may include a possible reduction of amounts allocated for claims, Costs and Fees, or other allocated amounts. The Mediator may base his/her recommendation on any number of factors including the compilation of the Settlement Class, the composition of the Authorized Claimants, the inclusion of disclaimers, Defendants' ability to pay, and other issues that may have been discussed at the mediation. The parties retain the right to accept or reject the Mediator's recommendation.

(3) Defendants may terminate this Agreement if the Final Settlement Amount exceeds One Hundred and Eighty Thousand Dollars ($180,000.00) and Named Plaintiff and Defendants do not both agree to the recommendation

made by the Mediator. To terminate this Agreement under this Section 2.8, Defendants' Counsel shall give written notice ("Notice of Termination") via overnight delivery and via email to Class Counsel no later than ten (10) days after a recommendation is rejected by one or both of the Parties.

(4)  In the event that Defendants provide Notice of Termination to Class Counsel, Class Counsel may, within five (5) days of receipt of the Notice of Termination, agree to pro-rate down the Claims and Costs and Fees such that the Final Settlement Amount does not exceed One Hundred and Eighty Thousand Dollars ($180,000.00).  In the event that Class Counsel exercises this option, the term Final Settlement Agreement as used in this Agreement shall reflect such amount.

**(B)  Effect of Termination.** Termination shall have the following effects:

(1)  In the event this Agreement is terminated, the Parties will continue with the litigation as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred.

(2)  Defendants shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, Class Counsel or otherwise.  However, the party terminating this Agreement shall be responsible for paying (1) the costs, fees and expenses of the Settlement Claims Administrator incurred up until the mailing of the termination notice is complete.  If the Agreement is terminated on consent of all Parties or by the Court, the Parties shall share (1) the costs incurred by Settlement Claims Administrator for all services rendered in connection with this Agreement, including the notice of termination to the Class, and (2) the costs and fees associated with the Mediator and/or the CPA, if any.

(3)  The Parties shall advise the Court of the termination, and shall apply to the Court to have a single approved notice mailed to Class Members advising them of the termination. If approved by the Court, then the Settlement Claims Administrator shall provide a Court-approved notice to Class Members and any Authorized Claimants that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members or Authorized Claimants under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

(4)  If any party terminates this action, Defendants retain the right to contest the merits of the claims being asserted in the Action, including that Named Plaintiff is not an appropriate representative for class certification purposes. Class Counsel shall sign a stipulation to decertify the class upon termination of this Agreement, provided that the Named Plaintiff reserves all rights to seek to certify the class if this Agreement is terminated.

(5)  If this settlement is not consummated for any reason, including (1) a

Termination under this Agreement, (2) a ruling by the Court declining to enter a Preliminary Approval Order or Final Order in the form submitted by the Parties (including a reversal and/or modification on appeal of the Court's Preliminary Approval Order or Final Order), or (3) for any other reason not presently contemplated, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of the Court's ruling if necessary or involving the Mediator if practical. To the extent such efforts fail, the Parties may continue to litigate the Action as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred.

(6)    None of the information provided by Defendants to Class Counsel for purposes of settlement negotiations or obtained by Class Counsel about Class Members as a result of the settlement approval process shall be used by Class Counsel in the action should this Agreement be terminated or not consummated for any reason.

## 3.  SETTLEMENT TERMS AND DUE DILIGENCE REVIEW

3.1    **Amount.**  Subject to their rights as set forth in Section 2.8, including the right to terminate this Agreement, Defendants agree that One Hundred Eighty Thousand Dollars ($180,000.00), inclusive of Employer Payroll Taxes, for the purposes of calculation and allocation purposes and that amount shall fully resolve and satisfy any and all amounts to be paid to all Authorized Claimants for releasing claims, and any Court-approved Costs and Fees.  Under no circumstances, shall Defendants be required to pay or contribute any monies in excess of the Gross Settlement Amount.  No payments shall be made to Opt-outs or to those Class Members who fail to become Authorized Claimants, and amounts allocated to such individuals from the Gross Settlement Amount shall not be paid into the QSF and shall be retained by Defendants.

(A)    **Funding the QSF.** Defendants shall fund the QSF in the following payments:

(1)    The first payment shall be made within fifteen (15) days of the entry of the Preliminary Approval Motion in the amount of $15,000 to cover the costs of mailing the Notice and other expenses incurred by the Settlement Claims Administrator;

(2)    The second payment shall be made within thirty (30) days of the Final Effective Date in the amount of the Final Settlement Amount, minus any amounts paid to date.

(B)    **Reserve Fund.** The Settlement Claims Administrator shall set aside Five Thousand Dollars ($5,000.00) of the amount funded in Section 3.1(A) to cover any late claims, errors or omissions (e.g., individual Authorized Claimants who dispute the amounts allocated to them, or individuals who allege they should be part of the Class). Any Class Member or individual who wishes to challenge any error or omission shall provide a signed, sworn and notarized written statement to Class Counsel, the Settlement Claims Administrator, or Defendants' Counsel as

to why such error or omission should be corrected, along with supporting documents, if available. Any Party or Settlement Claims Administrator who receives such a statement must provide a copy to all Parties and the Settlement Claims Administrator within three (3) days by email. Defendants' Counsel shall notify any challenging individual, along with Class Counsel, within twenty (20) days whether such error or omission will be corrected and paid from the Reserve Fund. If Defendants' Counsel fails to respond within twenty (20) days of receiving a signed, sworn and notarized written statement by any challenging individual, such late claim, error or omission will be deemed an error and thereby corrected by the Settlement Claims Administrator in a reasonable amount of time. To the extent the Parties are unable to agree on an error or omission, such error or omission may be submitted to the Mediator for final resolution. Approximately three (3) to four (4) months after checks are distributed, the Settlement Claims Administrator and Class Counsel shall endeavor to resolve all outstanding errors and/or omissions through the Reserve Fund.

**(C)  Deduction of Employer and Employee Payroll Taxes.**

(1)  All applicable Employer Payroll Tax contributions ordinarily and regularly associated with wage payments, including, but not limited to, the employer share of FICA, FUTA, and SUTA will be paid by the Settlement Claims Administrator out of the QSF. Defendants will provide the Settlement Claims Administrator such information as is necessary for the Settlement Claims Administrator to make proper tax withholdings, issue and file tax-related forms, and comply with all tax reporting obligations.

(2)  The Settlement Claims Administrator shall calculate the appropriate and regular tax deductions from each Authorized Claimant's Individual Gross Amount (as calculated by Section 3.5) to determine the Individual Net Amount. The Individual Net Amount will be the amount reflected on the Settlement Checks. Any reduction reflected in the difference between the Individual Gross Amount and Individual Net Amount will not affect the Final Settlement Amount or the Net Settlement Amount.

**3.2  Payments from the QSF.** The Settlement Claims Administrator shall make the following payments from the QSF, once the QSF is funded as described in Section 3.1(A):

**(A)**  Within five (5) days of the QSF being funded as described in Section 3.1(A), the Settlement Claims Administrator shall (i) mail any Settlement Checks to Authorized Claimants, (ii) mail any and all Service Award to the Named Plaintiff, (iii) mail or wire-transfer payment to Class Counsel in the amount of Court-approved attorneys' fees and costs, and (iv) make payments to the Settlement Claims Administrator in the amount of Court-approved Settlement Claims Administrator's costs and expenses.

**(B)**  Any amounts representing uncashed Settlement Checks, Service Award, the Reserve Fund, or any other amount remaining in the QSF six (6) months after the

mailing of the final payment will revert back to Defendants.

### 3.3    Amounts Payable as Attorneys' Fees, Expenses and Costs.

**(A)**    At the Fairness Hearing and in connection with the Application for Final Approval, Class Counsel will petition the Court for an award of no more than one third (33.3%) of the Gross Settlement Fund, which shall include attorneys' fees, costs and expenses incurred in connection with this Action, Class Counsels' accountants, experts, and all claims administration, including costs of publication.

**(B)**    The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement. In the event the Court rejects or modifies the request for attorneys' fees, the term Cost and Fees as used in this Agreement shall reflect the amount of any reduction.

**(C)**    Defendants shall fund the Court-approved Costs and Fees representing Class Counsel's costs, fees and expenses in the manner described in Section 3.1.

### 3.4    Service Award to Named Plaintiff.

**(A)**    In return for services rendered to Class Members, Authorized Claimants or the Settlement Class, at the Fairness Hearing, Named Plaintiff may apply to the Court to receive a Service Award of no more than Nine Thousand Dollars ($9,000.00) from the QSF.

**(B)**    The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement. In the event the Service Award is reduced or eliminated by the Court, the term Cost and Fees as used in this Agreement shall reflect the amount of any reduction.

**(C)**    Defendants shall fund the Court-approved Costs and Fees representing the Service Award in the manner described in Section 3.1.

### 3.5    Net Settlement Fund and Allocation to Class Members.

**(A)    Employment Tenure.** First, each Class Member's individual tenure of employment (as calculated by weeks worked during the Settlement Period) ("Employment Tenure") will be determined. Such information will be provided in the Class List to the Settlement Claims Administrator and Class Counsel pursuant to Sections 2.3(A) and 2.3(B).

**(B)    Percentage Allocation.** Second, each Class Member's percentage is calculated by (1) taking the individual Class Member's Employment Tenure as the numerator, and (2) dividing it by the sum of total work weeks for all Class Members during the Settlement Period as the denominator. The denominator for each Class Member will be the same number. As a result of this calculation, the total of all Class Members' numerators must equal the denominator. Thus, the Class Member's adjusted Employment Tenure divided by the sum of all Settlement Period work weeks for all Class Members, equals his/her individual

percentage allocation.

**(C)** **Amount Allocation.** Third, the Gross Settlement Fund less Costs and Fees, including Claims Administration Costs, and less the Reserve Fund and shall be multiplied by each Authorized Claimant's percentage allocation as calculated in Section 3.5(B). This represents the individual amount allocated to each Authorized Claimant – or Individual Gross Amount.

**(D)** **Wage Documentations.** Within ten (10) days of the Preliminary Approval Order being entered, Defendants shall provide the Settlement Claims Administrator with each Class Member's Employment Tenure, broken down by year during the Settlement Period.

### 3.6    Review Records

**(A)** Any dispute regarding the production of the Class List or Class Documentation ("Review Records") shall be referred to the Mediator for resolution.

### 3.7    Tax Characterization.

**(A)** Settlement Checks to Authorized Claimants as identified in Section 3 will be deemed W-2 wage income and shall be subject to applicable payroll and withholding taxes. All Costs and Fees and expenses, such as the fees to Class Counsel and the Settlement Claims Administrator, will be considered 1099 non-wage income to Class Counsel or Settlement Claims Administrator. All Costs and Fees shall be paid from the QSF, unless this Agreement is terminated or not consummated for any reason in which case Section 2.8(B) applies.

### 3.8    Release of Claims.

**(A)** By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement each individual Class Member who does not timely opt-out [(or does not become an Authorized Claimant)] pursuant to this Agreement, on behalf of himself/herself, his/her heirs, representatives, successors, assigns, and attorneys, forever and fully releases and discharges Defendants and Releasees from all Released Class Claims [with the exception of claims arising under the Fair Labor Standards Act].

**(B)** By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each individual Authorized Claimant, hereby forever and fully releases and discharges Defendants and Releasees from all Released Class Claims.

**(C)** By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, Named Plaintiff forever and fully releases and discharges Defendants and Releasees from all Released Class Claims as well as form any other claim of any kind under federal, state, or local law or common law based on events that took place from the beginning of time through execution of this Agreement.

(D)    Except as provided in this Agreement, upon payment of all Costs and Fees as approved by the Court, Class Counsel, on behalf of Authorized Claimants and Class Members, irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants or Releasees for attorney's fees, expenses, disbursements, and all other Costs and Fees associated with Class Counsel's representation of the Class and Named Plaintiff herein.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Action.

(E)    Defendants represent that at the time of executing this Agreement, they are not aware of any pending Department of Labor investigations, any pending administrative proceedings regarding any Class Member, any judicial process commenced or ongoing regarding any Class Member.

(F)    Nothing in this Agreement shall be construed as a release of claims arising after the execution of this Agreement, including claims for actual or threatened retaliation for participation in the Settlement.

**3.9    Non-Admission of Liability.**

(A)    Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants of any liability, culpability, negligence or wrongdoing toward the Named Plaintiff and/or any Class Members, or any other person.  By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiff and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to fully and finally resolve and settle all disputes with the Named Plaintiffs and Class Members. Settlement of the Action, negotiation and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Plaintiffs in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.  There has been no determination by any court as to the merits of the claims asserted by Named Plaintiff against Defendants or as to whether a class should be certified other than for settlement purposes only.

## 4.  INTERPRETATION AND ENFORCEMENT

**4.1**     **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**4.2**     **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

**4.3**     **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**4.4**     **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiff and all Class Members in this Action, this agreement is binding.

**4.5**     **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**4.6**     **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**4.7**     **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**4.8**     **Continuing Jurisdiction.** The Parties shall request the Mediator to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties may not unilaterally petition the Court or the Mediator to modify this Agreement or to increase the Defendants' payment obligations, except to the extent provided in this Agreement.

**4.9**     **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms

of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

4.10   **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

4.11   **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

4.12   **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

4.13   **Non-Disclosure.**   Named Plaintiff agrees prior to the filing of the Motion for Preliminary Approval not to disclose to individuals other than Class Members, immediate family, tax preparers, and attorneys the terms of this Agreement or the negotiations leading thereto except in court papers or if required by legal process or protected by law.  After the filing of the Motion for Preliminary Approval, aside from the disclosures in the Notice and in Court papers, the maximum confidentiality allowed by law applies to the negotiations leading to the Settlement described in the Agreement.

4.14   **Full Relief.**  Named Plaintiff and Class Members who timely submit Claim Forms represent, warrant and acknowledge that, following receipt of the payments set forth herein, they will have been paid in full satisfaction for the Released Claims.  Named Plaintiff, Class Members who timely submit Claim Forms, and Class Members who do not opt-out of the settlement agree that if any of them commences any action covered by the Released Claims, or seeks to participate in any such action, whether as a member of a class action, collective action or otherwise for the claims released herein, this Agreement may be used by Defendants as evidence, including but not limited to a binding admission that the Named Plaintiff and/or the applicable Class Member has been paid for all monies due and owing as set forth herein, and/or that any such claims have been voluntarily and fully released.

4.15   **Consultation and Authority.**   Class Counsel for Named Plaintiff warrants and

represents that they have consulted with Named Plaintiff and have full authority to enter into this Agreement on behalf of Named Plaintiff and the Settlement Class.

**WE AGREE TO THESE TERMS,**

**Old Bermuda Inn, Inc.**

**By:** _____
**Title:** _____
**Print Name:**_____
**Dated:**_____2019

**John Vincent Scalia, Sr.**

_____

**Dated:**_____2019

**Gabrielle Monaco**

_____

**Dated:**_____2019

**Approved as to Form:**

**PITTA LLP**

**By:**_____
        **Joseph Farelli, Esq.**

**Dated:**_____2019

**Giskan Solotaroff & Anderson LLP**


**By:** _____
　　　　**Jason Solotaroff, Esq.**


**Dated:**_____2019